IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
SANDRA JOHNSON,                       )
                                      )
            Plaintiff,                )
                                      )
      v.                              )    Case No.13-1464-RDR
                                      )
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of                )
Social Security Administration,       )
                                      )
            Defendant.                )
```

**MEMORANDUM AND ORDER**

On August 26, 2009, plaintiff filed an application for social security disability insurance benefits. This application alleged a disability onset date of November 25, 2008. Plaintiff's application was partially granted initially, but later denied in full. Plaintiff requested a hearing and one was conducted on April 19, 2012. The administrative law judge (ALJ) considered the evidence and decided on August 8, 2012 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant.

This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's application for benefits. The court shall reverse and remand the decision to deny benefits because: first, contrary to SSR 96-8p, the ALJ's assessment that plaintiff could perform simple

and low complexity tasks does not sufficiently describe plaintiff's capacity to concentrate; and second, contrary to SSR 96-8p, the ALJ's reference to plaintiff's activities of daily living does not support the ALJ's conclusion that plaintiff's mental functioning is sufficient to sustain substantial gainful employment.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1260, quoting Lax

2

v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084, quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). "We neither reweigh the evidence nor substitute our judgment for that of [defendant]." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004)(interior quotation omitted).

II.  THE ALJ'S DECISION (Tr. 14-26).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 15-16). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the

criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth step of the evaluation process.  The ALJ determined that plaintiff maintained the residual functional capacity to perform work which exists in significant numbers in the national economy.

The ALJ made the following specific findings in his decision.  First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2013. Second, plaintiff did not engage in substantial gainful activity after November 25, 2008, the alleged onset date of disability.  Third, plaintiff has the following severe impairments:  depression and anxiety.  Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Related to this finding, the ALJ

4

determined that plaintiff has a mild restriction in activities of daily living and moderate difficulties in concentration, persistence or pace and in social functioning.  (Tr. 19).  Fifth, plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) or work requiring lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday.  The ALJ found that plaintiff can occasionally stoop or crouch; she can perform simple and low complexity tasks at a competitive level, but not at a greater pace; and she is able to relate frequently (from one-third to two-thirds of the time) to co-workers and supervisors; and only occasionally (up to one-third of the time) with the public.

Finally, the ALJ found that plaintiff can perform such employment as:  clerk, general office; file clerk; and date entry clerk.  These are semi-skilled occupations which the ALJ determined plaintiff could perform because she has acquired work skills from past relevant work that are transferable to other occupations.  ALJ concluded that these jobs exist in substantial numbers in the national economy.  The ALJ relied in part upon the testimony of a vocational expert for these findings.

III.   THE COURT SHALL REVERSE AND REMAND THE DECISION TO DENY BENEFITS FOR FAILURE TO COMPLY WITH SSR 96-8p.

Plaintiff contends that the ALJ erred by failing to provide a proper RFC as required by SSR 96-8p in that the ALJ dismissed the only opinions regarding plaintiff's mental functioning and failed to cite to sufficient evidence to support his RFC findings.  Plaintiff also contends that the ALJ improperly assessed plaintiff's credibility.  The court shall focus upon the first argument in this opinion; specifically, the contention that the ALJ failed to set out a proper RFC assessment as required by SSR 96-8p.  The court finds that the ALJ's RFC assessment does not comply with the requirements of SSR 96-8p for two reasons.

A. <u>The RFC assessment does not adequately identify plaintiff's limitations in her ability to concentrate</u>.

As plaintiff states in her brief (Doc. No. 10, p. 9), under SSR 96-8p an ALJ must discuss how the evidence supports each conclusion.  1996 WL 374184 at *7.  SSR 96-8p further provides that an RFC assessment must identify an individual's functional limitations on a function-by-function basis, including the functions in paragraphs (c) of 20 C.F.R. §§ 404.1545 and 416.945.  <u>Id.</u> at *1. Paragraph (c) of those sections concerns mental abilities, and specifically describes how a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying instructions, and in responding appropriately to supervision,

6

coworkers, and work pressures in a work setting, may reduce the ability to do work."

In this case, the mental residual functional capacity (MRFC) assessment completed by Dr. Contee indicated that plaintiff had moderate limitations in the following areas (among others): the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[1] (Tr. 662-663). Dr. Contee also concluded that plaintiff would be limited to unskilled, nondetailed tasks with adequate pace and persistence and that plaintiff could relate to coworkers and supervisors but could not work with the public. (Tr. 664). Dr. Contee did not elaborate upon whether the limitation to unskilled work was connected to aptitude or concentration or some other factor.

The ALJ acknowledged generally that plaintiff has moderate difficulties with regard to concentration, persistence or pace. (Tr. 19). In addition, the ALJ appeared to credit entries from plaintiff's California medical records indicating that plaintiff had impaired concentration. (Tr. 23). But, he gave the

---

[1] Dr. Contee's assessment was approved in this regard by Dr. Jessee (Tr. 669-670) and Dr. Khan (Tr. 674).

7

unskilled labor limitation and public contact limitation in the MRFC assessment "minimal weight" because medical records showed that plaintiff was generally alert and oriented with appropriate mood and thought processes, and the records did not describe any functional limitations or indicate that plaintiff's concentration was so impaired as to preclude basic work activities as set out in SSR 85-15. (Tr. 23). The ALJ also explained that plaintiff's ability to watch television, drive a vehicle, and shop and handle money "are indicative of the ability to maintain concentration for at least simple to low complexity tasks." (Tr. 23). The ALJ further explained that, contrary to the MRFC assessment, plaintiff could interact occasionally with the public because she reported no problems getting along with family, friends or neighbors and because the medical records consistently described plaintiff as cooperative and friendly. (Tr. 23).

   The ALJ made no specific findings as to plaintiff's ability to concentrate and how it affected plaintiff's functional capacity. While the ALJ stated (as just mentioned) that plaintiff's activities of daily living were "indicative of the ability to maintain concentration for at least simple or to low complexity tasks," the mental capacity or ability to perform at a certain skill level is not relevant to the functional capacity to concentrate over a period of time. See Chapo v. Astrue, 682

8

F.3d 1285, 1290 n.3 (10th Cir. 2012)(restriction to "simple" work does not capture mental limitations described by treating doctor); Groberg v. Astrue, 505 Fed.Appx. 763, 770 (10th Cir. 2012)("[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments"; Wiederholt v. Barnhart, 121 Fed.Appx. 833, 839 (10th Cir. 2005)(where ALJ makes mental restrictions as to concentration and other functions, phrasing a hypothetical question only in terms of "unskilled" work is inadequate); Wayland v. Chater, 1996 WL 50459 *2 (10th Cir. 2/7/1996)(mental impairment may not be functionally equated with the lack of a skill); Evans v. Colvin, 2014 WL 3860653 *8 (D.Colo. 8/6/2014)("the relationship between moderate limitations in concentration and unskilled work . . . is not so obvious"); Webb v. Colvin, 2014 WL 3853432 *7 (D.Kan. 8/6/2014)(limitations in concentration are not expressed in RFC findings of simple instructions and simple job-related tasks); Price v. Colvin, 2014 WL 1246762 *5 (D.Kan. 3/26/2014)(limits to simple, unskilled work do not adequately incorporate restrictions in maintaining attention and concentration); Field v. Astrue, 2009 WL 1212044 *8 (D.Kan. 5/5/2009)(limitation to simple, unskilled job tasks is too broad and unspecified to convey meaning with regard to mental limitations). Therefore, contrary to SSR 96-8p, the ALJ failed to identify in his RFC assessment plaintiff's

9

functional limitations in the area of concentration and failed to discuss how the evidence regarding plaintiff's limitations in concentration relate to his conclusion that plaintiff could perform unskilled or semi-skilled work.

B. The RFC assessment is not adequately linked to the evidence in the record as to plaintiff's ability to concentrate and its impact upon plaintiff's ability to perform substantial gainful activity.

The ALJ also has failed to comply with the requirement of SSR 96-8p that he describe how the evidence supports his RFC assessment. The Tenth Circuit has stated that in reaching an RFC determination, an ALJ is required to rely upon all the evidence in the record, not just medical opinions. Wells v. Colvin, 727 F.3d 1061, 1071 (10th Cir. 2013)(citing SSR 96-8p). So, inconsistency with the record as a whole is "a legitimate basis on which to discount or reject a medical opinion," such as Dr. Contee's MRFC assessment. Id. at 1072. But, where the conflict between medical opinions and an ALJ's RFC assessment "seriously challenge[s]" the validity of that assessment, "it may be inappropriate for the ALJ to reach an RFC determination without expert medical assistance." Id.

In this instance, the ALJ characterized plaintiff's function report as indicating that plaintiff is able to watch television, drive a motor vehicle, and shop and handle money. Looking at the same report, the court notes that plaintiff

10

stated: that her ability to handle money has been affected although plaintiff does not explain how (Tr. 165); that she is competent to pay bills, but cannot because she lacks income (Tr. 163); that she can use a checkbook and handle a savings account (Tr. 163); that she can shop in stores for food (Tr. 163); and that she can drive a car (Tr. 163) and watch television (Tr. 160).

As already mentioned, the ALJ concluded that these activities were indicative of the ability maintain concentration for at least simple to low complexity tasks. The Tenth Circuit, however, has stated that watching television is not inconsistent with concentration problems related to pain. Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011); Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).

A line of cases from this district also has held that certain activities of daily living are not inconsistent with disability from substantial gainful activity. In Gregory v. Colvin, 2013 WL 5390019 *7-8 (D.Kan. 9/25/2013), the ALJ relied upon evidence that a claimant could care for himself, watch television, drive, go out alone, shop and spend time with others to hold that the claimant was not disabled from a number of ailments including PTSD and depression. The court rejected the ALJ's analysis noting that social security regulations hold that such activities as taking care of oneself, household tasks and

11

hobbies are generally not considered to constitute substantial gainful activity (citing 20 C.F.R. 404.1572(c)), and that the sporadic performance of such tasks does not establish that a person is capable of engaging in substantial gainful activity. Id. (citing Krauser, supra, and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)).  In Holle v. Colvin, 2013 WL 5256344 *6-7 (D.Kan. 9/17/2013), the ALJ wrote that watching television, doing computer work and tending to a dog, among other activities, were not compatible with total disability. The court disagreed, engaging in a similar discussion as in the Gregory case.  Finally, in Heppler v. Colvin, 2013 WL 4564793 *2-3 (D.Kan. 8/28/2013), the ALJ noted that the claimant (who had schizoaffective disorder and panic disorder) watched television; performed household chores; and was able to shop, pay bills and count change.  The ALJ found that these activities were inconsistent with claimant's allegations of totally debilitating symptomatology.  The court disagreed, commenting that these tasks did not qualify as the ability to do substantial gainful activity.

Consistent with the above-cited case authority, the court finds that there is a significant conflict between the opinion of Dr. Contee and the ALJ's RFC assessment which is not adequately resolved by the ALJ's reference to plaintiff's function report or her activities of daily living.  This means

12

that the ALJ has failed to comply with the requirement of SSR 96-8p that he describe how the evidence supports his RFC assessment, even assuming that the assessment's restriction to simple and low complexity tasks was adequate to describe a limitation in the ability to concentrate.

IV. CONCLUSION

The court shall reverse defendant's decision to deny plaintiff's applications for benefits. The court shall direct that this case be remanded to the Commissioner for further proceedings consistent with this opinion. This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 25th day of August, 2014, at Topeka, Kansas.

s/RICHARD D. ROGERS
Richard D. Rogers
United States District Judge